300002452



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
(Northern Division)

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

NOV 2 9 2022

CLERK, U.S. DISTRICT COURT
By_____MS_____
Deputy

JOE JOHNSON )
11550 LIVINGSTON ROAD UNIT 441572 )
FORT WASHINGTON, MD   20744 )
)
    Plaintiff, )
) **3 -22CV-2663X**
Vs. ) Civil No. _____
)
MYRA BROWN )
1819 CIMARRON TRL )
GRAPEVINE, TX   76051-2754 )
)
    And )
)
ALEXANDER TAYLOR )
5669 PHELPS STREET )
THE COLONY, TX 75056-1954 )
)
    Defendants. )

## ORIGINAL COMPLAINT

COMES NOW, the Plaintiff, Joseph Johnson, Jr., and brings this civil action against the

Defendants for damages, and for that he states:

## JURISIDCTION

1.      This Court has subject-matter jurisdiction in that the claims arise under the laws of

the United States. *See* 5 U.S.C. §§701, *et seq.;* 28 U.S.C. §§1331, 2201-2202; 42 U.S.C. §1985(3).

2.      This Court further has jurisdiction pursuant to 28 U.S.C. §1332 in that the parties

have true diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of

interest and cost.

## PARTIES

3.     Plaintiff was a resident in Fort Washington, Maryland and was a student at the University of Maryland University College ("UMUC") in College Park, Maryland and signed federally guaranteed student loans, including a Pell Grant, that were consolidated under the William D. Ford Federal Direct Loan Program.

4.     Defendants, and each of them, are residents and citizens of the State of Texas.

## CONTROVERSY

Plaintiff is just one of the millions of Americans who were harmed by the actions taken by the Defendants to prevent the Plaintiff from benefitting from the Department of Educations' new Debt Forgiveness Program that will benefit tens of millions of Americans financially.

## I.     Statutory and Regulatory Background

The Secretary of Education ("Secretary") is charged with carrying out certain student loan programs under Title IV of the HEA, 20 U.S.C. § 1070 *et seq.* Foremost among these is the William D. Ford Federal Direct Loan Program, which allows students to apply for and receive Direct Loans from the federal government to pay for their educational expenses, including tuition and living expenses. 20 U.S.C. §1087ll. Title IV also includes other programs, such as the Federal Family Education Loan ("FFEL") Program, *id.* §§1071-1087-4, and the Perkins Loan Program, *id.* §§1087aa-1087ii, although no new loans are authorized under either program. *See id.* §1078(a)(1) (no new FFEL loans after July 1, 2010); *id.* §1087aa(b)(2) (no new Perkins loans after September 30, 2017). The HEA delegates significant authority to the Secretary to administer the Department's portfolio of more than 43 million federal student loans, *see* 20 U.S.C. §§1082, 3441, 3471, including the authority to "compromise, waive, or release any right, title, claim, lien, or demand" acquired in the Secretary's performance of his vested "functions, powers, and duties" to administer student loans, *id.* §1082(a).

## II.     The HEROES Act

The HEROES Act, Pub. L. No. 108-76, 117 Stat. 904 (2003) (codified at 20 U.S.C. §§1098aa-1098ee), authorizes the Secretary to take broad and decisive action with respect to the federal student financial aid programs in times of national emergency. Specifically it provides that, "[n]otwithstanding any other provision of law," the Secretary may "waive or modify any statutory or regulatory provision applicable to" the federal student financial aid programs "as the Secretary deems necessary in connection with a … national emergency to" accomplish certain statutory goals. 20 U.S.C. §1098bb(a)(1). As relevant here, the Secretary may provide such waivers as "necessary to ensure" that (1) covered Title IV financial aid recipients "are not placed in a worse position financially in relation to that financial assistance because of their status as affected individuals," and (2) administrative requirements placed on such covered individuals are "minimized … to ease the burden on such students and avoid inadvertent, technical violations or defaults." *Id.* §1098bb(a)(2). The Act defines the covered population of "affected individual[s]" broadly to encompass any individual who, as relevant here, either "resides or is employed in an area that is declared a disaster area by any Federal, State, or local official in connection with a national emergency," or "suffered direct economic hardship as a direct result of a [national emergency] as determined by the Secretary." *Id.* § 1098ee(2). And a "national emergency" is "a national emergency declared by the President of the United States." *Id.* § 1098ee(4); *see also* 50 U.S.C. §1621 (authorizing President to declare national emergency). The Act exempts any exercise of the Secretary's authority from certain otherwise-applicable procedural requirements, including Administrative Procedure Act ("APA") notice-and-comment rulemaking. Section 1098bb(b)(1) provides that "[n]otwithstanding section 1232 of this title and section 553 of Title 5, the Secretary shall, by notice in the Federal Register, publish the waivers or modifications of statutory and regulatory provisions the Secretary deems necessary to achieve the purposes of this section."

And Section 1098bb(b)(1)(d) states that 20 U.S.C. §1098a, which requires the Department to engage in negotiated rulemaking to develop certain proposed rules under the HEA, "shall not apply to the waivers and modifications authorized or required by this part." The statute also explicitly states that the Secretary "is not required to exercise the waiver or modification authority under this section on a case-by-case basis." *Id.* §1098bb(b)(3). Historically, the Department has exercised this authority to provide categorical relief to borrowers in connection with national emergencies. *See* U.S. Dep't of Just., Office of Legal Counsel, *Use of the HEROES Act of 2003 to Cancel the Principal Amounts of Student Loans,* 2022 WL 3975075, at \*4-5 (Aug. 23, 2022) ("OLC Opinion"); U.S. Dep't of Educ., Office of the General Counsel, *The Secretary's Legal Authority for Debt Cancellation* (Aug. 23, 2022), *available at* Notice of Debt Cancellation Legal Memorandum, 87 Fed. Reg. 52,943 (Aug. 30, 2022) ("ED Legal Authority Memo").

## III.     The COVID-19 Pandemic

In March 2020, then-President Trump declared a national emergency to contain and combat the virus known as COVID-19. *See* Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, 85 Fed. Reg. 15,337 (Mar. 18, 2020). That declaration remains in effect, and the federal government has declared every state, the District of Columbia, and the territories to be disaster areas due to COVID-19. *See* Federal Emergency Management Agency, COVID-19 Disaster Declarations, https://perma.cc/B7KA-W4KD. Over the past two and a half years, COVID-19 has killed more than 1 million Americans, *see* Centers for Disease Control and Prevention, COVID Data Tracker (Oct. 6, 2022), ttps://perma.cc/5ERQ-4XQW, and has caused significant disruptions to all aspects of American life.

Even now, COVID-19 is killing more than 300 Americans and causing thousands more to be hospitalized every day. *Id.* In response to the pandemic and the myriad economic difficulties it has imposed, the federal government has taken several significant actions to provide relief to federal student loan borrowers with Department-held loans.

On March 20, 2020, the Secretary invoked the HEROES Act to pause repayment obligations and suspend interest accrual on Department-held student loans. *See* Federal Student Aid Programs, 85 Fed. Reg. 79,856, 79,857 (Dec. 11, 2020) ("2020 Notice"). Shortly thereafter, Congress enacted legislation directing the Secretary to suspend all payments on any Title IV loans held by the Department and to apply a zero-percent interest rate to all such loans, through September 2020. Coronavirus Aid, Relief, And Economic Security Act, Pub. L. No. 116-136, §3513, 134 Stat. 281 (2020). These protections were extended by both the Trump Administration and the Biden Administration and remain in effect today pursuant to invocations of the Secretary's HEROES Act authority. *See,* 2020 Notice, 85 Fed. Reg. at 79,857; Federal Student Aid ("FSA"), Fiscal Year 2020 Annual Report (Nov. 16, 2020), https://perma.cc/9ZM7-HWZP ("FSA Report"); Memo from Secretary Cardona to Chief Operating Officer ("COO") Cordray ("Decision Memo"), Ex. B to Decl. of James Kvaal ("Kvaal Decl."), App'x 22. As a result, federal student loan borrowers with Department-held loans have not been required to make payments on those loans for more than two and a half years. On August 24, 2022, the Secretary announced that he would use his authority under the HEROES Act to extend the payment pause and zero-percent interest protections one final time, through December 31, 2022. *See* U.S. Dep't of Educ., *Biden-Harris Administration Announces Final Student Loan Pause Extension Through December 31 and Targeted Debt Cancellation to Smooth Transition to Repayment* (Aug. 24, 2022), https://perma.cc/AP3Q-3V6C.

**IV. The Targeted One-Time Pandemic Loan Discharge Plan**

To address the financial harms to student loan borrowers caused by the pandemic and ensure a smooth transition back to repayment status after this long payment pause, the Secretary announced he would use his HEROES Act authority to provide targeted one-time debt relief to federal student loan borrowers affected by the pandemic.[1] *Id.* Designed to "address the financial harms of the pandemic" by providing relief to "borrowers at highest risk of delinquencies or default once payments resume," the Department's plan will make up to $10,000 in student loan debt relief available to eligible borrowers making less than $125,000 (or married couples making less than $250,000). *Id.* Borrowers who received a Pell Grant to attend college are eligible to receive up to $20,000 in loan relief. *Id.* This loan forgiveness program is based on the Secretary's determination that such measures are necessary to ensure that "borrowers subject to the payment pause are not placed in a worse position financially by the COVID-19 national emergency as they restart payments." Decision Memo at 1. The Secretary recognized that while the payment pause had "delivered substantial relief to millions of loan borrowers," additional steps are needed to address the "heightened risk of loan delinquency and default" that many borrowers face upon reentering repayment and to ensure that such borrowers are not "in a worse position financially due to the pandemic with regard to their ability to repay their loans." *Id.* That determination was based on, among other things, an economic analysis finding that discharging $10,000 in federal student loan debt (and $20,000 for Pell Grant recipients) for borrowers making less than $125,000 (or households making less than $250,000) would reduce the likelihood of delinquency and default for borrowers transitioning back to repayment and ensure that such borrowers are not made worse off with respect to their financial assistance by the COVID-19 pandemic. *See generally* Rationale

---

[1] The Secretary published the relevant HEROES Act waivers and modifications in a notice in the Federal Register on October 12, 2022. *See* 87 Fed. Reg. 61,512 (Oct. 12, 2022) ("2022 Notice").

for Pandemic-Connected Loan Discharge Program ("Supporting Analysis"), App'x 8-18. Direct

Loans, FFEL and Perkins loans held by the Department, as well as most defaulted loans are eligible

for one-time debt relief. *See* U.S. Dep't of Educ., FSA, *One-Time Student Debt Relief*,

https://perma.cc/ER4E-6RCS. Privately-held FFEL and Perkins loans are not eligible for relief,

although borrowers with such loans are eligible for relief if they applied to consolidate into a

Department-held loan before September 29, 2022.

## V.    Defendants' Conduct

Defendants are two individual Texas residents who were dissatisfied with the scope of the

Secretary's targeted debt-relief plan. Defendant Myra Brown claimed that she had roughly $17,000

in outstanding student loans but, because she chose at her own volition to obtain commercial loans,

she claimed that she was not eligible for this particular exercise of discretionary debt relief.

Defendant Alexander Taylor claimed that he had roughly $35,000 in student loans that were held

by the Department of Education and, because his most-recent income fell below the $125,000

threshold, Mr. Taylor claimed that he was only eligible for $10,000 in loan forgiveness. Because

Mr. Taylor did not receive a Pell Grant in college, however, he was not eligible for the additional

$10,000 in debt relief. Defendants claimed that "their student loan debt should be forgiven too"

because, they felt, "it is irrational, arbitrary, and unfair" to provide a greater measure of benefits

to others but not to themselves. Defendants claimed that the Secretary erred by not subjecting his

debt-relief plan to public notice and comment before finalizing its scope; on this basis, the

Defendant sought to enjoin the Department "from enforcing, applying, or implementing the

Program" for any of the more than 40 million lower-income Americans, including the Plaintiff,

who currently are eligible for, and expecting to benefit from, debt relief. Defendants have taken

affirmative action to prevent the Plaintiff, and more than 40 million lower-income Americans,

from obtaining the student loan debt relief because "if they can't get it, nobody should".

On October 10, 2022, the Defendants succeeded in preventing the Plaintiff, as well as more than 40 million other lower-income Americans who currently are eligible for, and expecting to benefit from, the debt relief. Plaintiff now brings this action seeking compensatory and punitive damages from the Defendants in that each of them knowingly and willfully interfered with the Plaintiff's contractual rights with the Department of Education to obtain a debt relief from his federal student loans, and violated and/or interfered with his statutory and due process rights to have his federal student loans held by the Department of Education partially discharged.

## CLAIMS FOR RELIEF

### First Claim for Relief
(Tortuous Interference with Statutory Rights)

26.     Plaintiff repeats each and every factual allegation contained in the preceding paragraphs as if set forth at length herein.

27.     Under the Department of Education's Debt Forgiveness Program, individuals would receive different levels of debt forgiveness based on whether they had received a Pell Grant in college. Those who received a Pell Grant could get up to $20,000 in debt forgiveness while those who did not could get $10,000 in debt forgiveness. One-Time Student Loan Debt Relief, U.S. Dep't of Educ., https://bit.ly/3ygbuGz (website as of Sept. 8, 2022). Under the Program, individuals with student loans that earned less than $125,000 (or $250,000 if married filing jointly) in 2020 and 2021 would be eligible and "most federal student loans" would qualify for debt forgiveness, including Direct Loans, FFELP loans held by the Department or in default, and Perkins Loans held by the Department.

26.     Under the debt forgiveness program, Plaintiff was entitled to $20,000 in debt forgiveness because he was one of the 40 million individuals with federal student loans that had received a Pell Grant while in college and earned less than $125,000 in 2020 and 2021.

27.     On October 15, 2022, Plaintiff, along with millions of others, submitted an application to the Department of Education for a "one-time federal student loan debt relief".

28.     Defendants, and each of them, either knew or should have known that the Plaintiff, along with millions of others, had a statutory right to have their application for a "one-time federal student loan debt relief" considered and acted upon by the Department of Education.

29.     Defendants, and each of them, fully aware of the "one-time federal student loan debt relief" that were submitted by millions, including, the Plaintiff, took affirmative action to prevent him, and millions of others, from obtaining the "one-time federal student loan debt relief".

30.     As a result of the Defendants' interference with the Plaintiff's application for the "one-time federal student loan debt relief" discharge, Plaintiff was deprived of his statutory right to have his "one-time federal student loan debt relief" application that he submitted to the Department of Education on October 15, 2022 considered under 20 U.S.C. §1087(a).

31.     But for the Defendants' interference, Plaintiff would have been entitled to receive a cancellation or discharge of his federal student loans in the amount of $20,000 because the Plaintiff established (as the Secretary required him to do) that he was an individual with a federal student loan that had received a Pell Grant and earned less than $125,000 in 2020 and 2021.

32.     Plaintiff has sustained damages in an amount in excess of $20,000 as a direct and proximate result of the Defendants' conduct.

**Second Claim for Relief**
(Tortuous Interference with Contract)

33.     Plaintiff repeats each and every factual allegation contained in the preceding paragraphs as if set forth at length herein.

34.     Prior to June 30, 2022, Plaintiff and the Secretary of the Department of Education entered into a valid contract whereby the Plaintiff's federally guaranteed student loans and FFEL loans were consolidated under the William D. Ford Federal Direct Loan Program ("FFDLP").

35.     Based upon information and belief, as of October 15, 2022, the total outstanding principle and interest balance owing on the loans was $34,564.

36.     Under the terms of the contract, Plaintiff had a right to request that the Secretary of the Department of Education cancel or discharge his consolidated loans under 20 U.S.C. §1087 and 34 C.F.R. §685.215(a) (1) (iii).

37.     On October 15, 2022, Plaintiff submitted a request for discharge of $20,000 of his federal consolidated student loans to the Secretary of the U.S. Department of Education under the "one-time federal student loan debt relief" provisions of 20 U.S.C. §1087(c).

38.     To establish entitlement to and obtain the $20,000 discharge, the Plaintiff was required to show that he had federal student loans, obtained a Pell Grant while in college and earned less than $125,000 in 2020 and 2021. Plaintiff demonstrated entitlement to the discharge.

39.     Defendants, and each of them, either knew, or should have known of the existence of the contract between the Plaintiff and the Department of Education because the Plaintiff, along with more than 40 million other individuals, had a federal loan that the Defendants took affirmative action to prevent from obtaining through the "one-time federal student loan debt relief".

40.     Defendants intentionally and without legal justification interfered with the contract between the Plaintiff and the Department of Education by taking affirmative action to prevent Plaintiff from obtaining the "one-time federal student loan debt relief". But for the Defendants' interference, Plaintiff would have been entitled to receive a cancellation or discharge of the consolidated loans, and as a direct and proximate result, Plaintiff has sustained damages.

### Third Claim for Relief
(Violation of 42 U.S.C. §1985)

41.     Plaintiff repeats each and every factual allegation contained in the preceding paragraphs as if set forth at length herein.

42.      Under section 1985 of Title 42 U.S. Code, it is unlawful for "two or more persons in any State ... [to] conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. §1985(3).

43.      Defendants, and each of them, conspired with one another for the sole purpose and with the specific intent of depriving the Plaintiff of the equal protection of the laws, and equal privileges and immunities under the laws in that the Defendants, in furtherance of the conspiracy, took affirmative action to unlawfully prevent the Plaintiff, as well as millions of other individuals, from obtaining the "one-time federal student loan debt relief" of his federal student loans. Defendants thwarted the Plaintiff's attempt to obtain a discharge of his loans by deliberately taking affirmative action to prevent the Plaintiff from obtaining a discharge of his federal student loans.

44.      Defendants interfered with the Plaintiff's due process rights by taking action that prevented the Plaintiff from obtaining the "one-time federal student loan debt relief".

45.      As a result, Plaintiff was injured in his person and property, and deprived of having and exercising the right and privilege of a citizen of the United States.

### Fourth Claim for Relief
#### (Intentional Infliction of Emotional Distress)

46.      Plaintiff repeats each and every factual allegation contained in the preceding paragraphs as if set forth at length herein.

47.      The defendants' conduct, as described above, was intentional and reckless.

48.      The defendants' conduct was extreme and outrageous. The defendants intended to cause harm to the Plaintiff, and millions of others.

49.      The defendants' conduct was motivated by their desire to prevent the Plaintiff, and millions of others, from entitlement to the "one-time federal loan debt relief" program.

50.     The defendants' wrongful conduct has caused severe physical and emotional distress to the plaintiff.

51.     Defendants' conduct has caused Plaintiff to be physically and emotionally harmed. The physical and emotional harm is ongoing and directly caused by defendants' actions directed towards the Plaintiff.

52.     Defendants' conduct as described herein was reasonably foreseeable to cause harm to the Plaintiff, and millions of others.

53.     The conduct of the defendants has been sufficiently outrageous as to entitle the plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court will:

a.      Enter judgment in his favor and against the Defendants, jointly and severally, in the amount of $20,000, as and for compensatory damages plus;

b)      An award of general damages for the defendants' wrongful acts;

c)      An award of special damages for the defendants' wrongful acts;

d)      An award of costs and attorney fees incurred in this action;

e)      An award of punitive damages in an amount greater than $60,000 for the defendants' reprehensible and outrageous conduct; and

f)      An award of punitive damages in an amount greater than $60,000 to deter the defendants' future reprehensible and outrageous conduct.

g)      And for such further and other relief as the Court deems just and propr.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by twelve jurors on each and every issue raised and triable by jury

herein.

Respectfully submitted,

November 29, 2022

*Joe Johnson*

Joe Johnson
11550 Livingston Road Unit 441572
Fort Washington, MD   20744

JS 44 (Rev. 10/20) - TXND (10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Joe JOHNSON

**DEFENDANTS**
Myra BROWN and Alexander TAYLOR

**(b)** County of Residence of First Listed Plaintiff   Prince George's
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Tarrant and/or Denton
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

RECEIVED
NOV 29 2022
MS
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
11550 Livingston Road Unit 441572
Fort Washington, MD  20749

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**      **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane      ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability      ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel &      Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander      Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'      Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability      ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 340 Marine | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle      **PERSONAL PROPERTY** | **LABOR** | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability      ☐ 370 Other Fraud      ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☒ 360 Other Personal      ☐ 380 Other Personal | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | Injury      Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 890 Other Statutory Actions |
| | ☐ 362 Personal Injury -      ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| | Medical Malpractice | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS**      **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights      **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting      ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment      ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations      ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment      ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | **Other:**      ☐ 462 Naturalization Application | | | |
| | ☐ 446 Amer. w/Disabilities - Other      ☐ 540 Mandamus & Other      ☐ 465 Other Immigration Actions | | | |
| | ☐ 448 Education      ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
5 U.S.C. §§701, et seq.; 28 U.S.C. §§1331, 2201-2202; 42 U.S.C. §1985(3), 28 U.S.C. §1332

Brief description of cause:
Tortious Interference with Contract, Conspiracy to Violate Statutory Rights

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
75000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*:
JUDGE _____   DOCKET NUMBER _____

DATE
Nov 28, 2022

SIGNATURE OF ATTORNEY OF RECORD
*Joe Johnson*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

United States District Court
Northern District of Texas
1100 Commerce Street, Room 1452
Dallas, TX  75242



RDC 99

75242

U.S. POSTAGE PAID
FCM LG ENV
FORT WASHINGTON, MD
20744
NOV 22 22
AMOUNT

$1.68
R2304H107805-8